UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BAUSCH & LOMB INCORPORATED and
WYETH LLC,

                Plaintiffs,            DECISION AND ORDER
    v.                                     13-CV-6498

VITAMIN HEALTH, INC.,

                Defendant.
_____

## PRELIMINARY STATEMENT

Plaintiffs Bausch & Lomb Incorporated and Wyeth LLC (collectively "Bausch & Lomb") bring this action under federal patent law, claiming that defendant Vitamin Health, Inc. ("Vitamin Health") infringed two patents owned by Bausch & Lomb. Specifically, Bausch & Lomb contends that Vitamin Health has infringed United States patent numbers 6,660,297 ("the '297 patent") and 8,603,522 ("the '522 patent"), both of which disclose a nutritional supplement intended to promote retinal health, by making and selling a vitamin supplement that utilizes, either literally or through the use of equivalent formulations, the inventions described in the patents. Bausch & Lomb also contends that Vitamin Health has engaged in false advertising and unfair competition in violation of the Lanham Act, codified at 15 U.S.C. § 1125(a).

## PROCEDURAL BACKGROUND

Familiarity with the facts of this case, as set forth in the Court's decision on the previous motions for summary judgment, is presumed. See Docket ## 143, 328. Presently before the Court is Vitamin Health's motion for partial summary judgment. Docket # 257. Bausch & Lomb submitted a response in opposition on June 3, 2016, see Docket # 292, and Vitamin Health submitted a reply in further support of its motion on June 17, 2017. Docket # 303. On July 15, 2016, the Court heard argument on Vitamin Health's motion for partial summary judgment. At argument, the Court ruled on all issues in the motion except for Vitamin Health's claim of prosecution history estoppel. This Decision and Order will address the remaining estoppel issue.

## DISCUSSION

"[A] patent protects its holder against efforts of copyists to evade liability for infringement by making only insubstantial changes to a patented invention." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 727 (2002). Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."

2

Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997) (citation omitted). However, as the Supreme Court has stated, "by extending protection beyond the literal terms in a patent the doctrine of equivalents can create substantial uncertainty about where the patent monopoly ends." Festo, 535 U.S. at 727 (citation omitted). To reduce the uncertainty, "competitors may rely on" the public record of the patent proceedings, also known as the patent's prosecution history. Id. "Prosecution history estoppel prevents a patentee from recapturing through the doctrine of equivalents the subject matter that the applicant surrendered during prosecution." Integrated Tech. Corp. v. Rudolph Tech., Inc., 734 F.3d 1352, 1356 (Fed. Cir. 2013)(citation omitted). Thus, where a patentee responds to a rejection by a patent examiner "by narrowing his claims, this prosecution history estops him from later arguing that the subject matter covered by the original, broader claim was nothing more than an equivalent. Competitors may rely on the estoppel to ensure that their own devices will not be found to infringe by equivalence." Festo, 535 U.S. at 727; see also Hormone Research Found., Inc. v. Genentech, Inc., 904 F.2d 1558, 1564 (Fed. Cir. 1990) ("Under [prosecution history estoppel], a patentee cannot recapture through equivalence certain coverage given up by argument or amendment during prosecution." (internal quotation, citation and brackets omitted)).

Vitamin Health's prosecution history estoppel argument focuses on a reexamination of the '297 patent, which spanned six years. According to Vitamin Health, during the re-examination proceeding, an examiner with the Patent and Trademark Office ("PTO") rejected the '297 patent claims because a particular item of prior art "already taught using copper and zinc in a 1:10 ratio, which would be covered by [Bausch & Lomb's] original patent claims." See Docket # 257-2 at 7. "To get the claims allowed," Vitamin Health argues, "[Bausch & Lomb] added an upper limit of 2.4 mg of copper to its claims," which essentially disclaimed copper to zinc ratios in excess of 1:23. Id. at 8. Vitamin Health argues that this change "overcame" the examiner's previous rejection and "made the claims patentable." Id. at 8-9. Vitamin Health's current products, however, all have 25 milligrams of zinc. Thus, Vitamin Health argues, "stretching the claimed range of zinc down so far would impermissibly recapture copper to zinc ratios much greater than 1:23 (such as 1:10) that [Bausch & Lomb] explicitly gave up during the reexamination." Id. at 10. "Explicitly, [Bausch & Lomb] said to the USPTO and the world that weight ratios in excess of 1:23 are not the claimed invention." See Docket # 303 at 6.

For its part, Bausch & Lomb disputes Vitamin Health's interpretation of the prosecution history. According to Bausch & Lomb, "[w]hen the reexamination history is viewed as a whole

4

it is clear that the one sentence on which Vitamin Health relies cannot give rise to estoppel because (a) it was not critical in distinguishing the prior art and (b) it was not acknowledged by, let alone, accepted by, the examiner." See Docket # 292 at 9. Bausch & Lomb argues that it's doctrine of equivalents argument focuses only on the amount of zinc in Vitamin Health's current products and will not be used in this case to "capture the territory between the original and amended claims of copper." Id. at 10. Moreover, Bausch & Lomb argues that the statement it made to the examiner about the 1:23 copper-to-zinc ratio was not used to differentiate the '297 patent from the prior art Vitamin Health cites to, but from an altogether different prior art reference cited by the examiner during the reexamination. Id. at 11. At best, Bausch & Lomb argues, the scope of what it surrendered during the reexamination proceeding was a 1:10 ratio of copper to zinc, which was the only embodiment of the amount of copper relative to the amount of zinc mentioned in the prior art reference relied upon by Vitamin Health in arguing estoppel. Id. at 12-13. Since none of the accused products use a 1:10 copper-to-zinc ratio, "Bausch & Lomb is not estopped from alleging that these products infringe under the doctrine of equivalents." Id. at 13.

Vitamin Health's prosecution history estoppel argument is not frivolous. However, when estoppel is invoked, "a close

5

examination must be made as to, not only what was surrendered, but also the reason for such a surrender." Bayer Aktiengesellschaft v. Duphar Int'l Research B.V., 738 F.2d 1237, 1243 (Fed. Cir. 1984). Here, the positions of the parties taken on the estoppel issue presented pay tribute to two vastly different accounts of the same segment of a lengthy and voluminous reexamination proceeding. Where ambiguity infiltrates a critical issue in a patent's prosecution history, and particularly where the meaning of the prior art is complex and subject to differing interpretations, untangling (if not translating) the reexamination proceedings by offering explanatory testimony by one skilled in the art could prove valuable to the Court in clarifying the prosecution history. Such testimony would also provide value to the Court as it determines the existence and scope of any claim surrender made as the result of either argument or amendment in the reexamination process. Therefore, in light of the parties' clear disagreement over the meaning and significance of the prosecution history as well as the existence and scope of any claim surrender made by Bausch & Lomb, I find that the issue is not appropriate for summary judgment on the current record. See, e.g., Calmac Mfg. Corp. v. Dunham-Bush, Inc., 929 F. Supp. 951, 962 (E.D. Va. 1996) ("Summary judgment based upon prosecution history estoppel, therefore, is inappropriate in a case where

6

the facts surrounding the prosecution history are in dispute." (citation omitted)); see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc., No. CV 92-3891 JGD, 1994 WL 782694, at *6 (C.D. Cal. May 9, 1994), aff'd, 103 F.3d 1571 (Fed. Cir. 1997) ("Although prosecution history estoppel is a question of law, it is based on underlying factual determinations. Summary adjudication is inappropriate where there are genuine issues of fact that bear on the scope of the estoppel.").

## CONCLUSION

For the reasons stated, Vitamin Health's motion for summary judgment alleging prosecution history estoppel, Docket # 257, is **denied**. The Court will consider the issue and reach a determination based on the testimony, exhibits, and evidence introduced at trial.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: July 29, 2016
       Rochester, New York