# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

BAUSCH & LOMB INCORPORATED and
WYETH LLC,

           Plaintiffs,

v.

VITAMIN HEALTH, INC.,

           Defendant.

**DECISION & ORDER**
13-CV-6498

## PRELIMINARY STATEMENT

Plaintiffs Bausch & Lomb Incorporated and Wyeth LLC (collectively "Bausch & Lomb") bring this action under federal patent law, claiming that defendant Vitamin Health, Inc. ("Vitamin Health") infringed two patents owned by Bausch & Lomb. Specifically, Bausch & Lomb contends that Vitamin Health has infringed United States patent numbers 6,660,297 ("the '297 patent") and 8,603,522 ("the '522 patent"), both of which disclose a nutritional supplement intended to promote retinal health, by making and selling vitamin supplements that utilize, either literally or through the use of equivalent formulations, the inventions described in the patents. Bausch & Lomb also contends that Vitamin Health has engaged in false advertising and unfair competition in violation of the Lanham Act, codified at 15 U.S.C. § 1125(a).

By motion dated May 6, 2016, Bausch & Lomb seeks summary
judgment[1] of validity against Vitamin Health, arguing that the
asserted claims of the '297 and '522 patents are valid under
Section 112 of the Patent Act, codified at 35 U.S.C. § 112.  See
Docket  #  258.    Vitamin  Health  submitted  a  response  in
opposition, see Docket # 297, and Bausch & Lomb has submitted a
reply in further support of its motion.   Docket # 306.   After
considering the parties' submissions and hearing argument on the
motion, the Court now renders its decision.   For the reasons
that follow, Bausch & Lomb's motion for summary judgment of
validity, Docket # 258, is **granted in part and denied in part**.

## RELEVANT PROCEDURAL BACKGROUND

On June 10, 2014, Bausch & Lomb filed an amended complaint
raising three causes of action: (1) Vitamin Health infringed the
composition claimed by the '297 patent;  (2) Vitamin Health
infringed the methods covered by the '522 patent; and  (3)
Vitamin Health engaged in false advertising in its labeling and
sale of the accused products.  See Docket # 63.  By motion dated
July 26, 2016, Bausch & Lomb moved to dismiss the second and
third counts of its amended complaint in an effort to simplify

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c), the
parties have consented to the jurisdiction of this Court for all
dispositive matters, including trial.

the case for trial scheduled to begin on August 1, 2016.   See

Docket # 329.   The Court requested expedited briefing and heard

argument on the motion on July 29, 2016.   Based on the law, the

arguments forwarded by counsel, and the imminent trial, the

undersigned issued an oral decision, read into the record,

dismissing with prejudice the second and third claims of Bausch

& Lomb's amended complaint.   Accordingly, the only issues left

for trial and, more immediately, left to resolve in the instant

summary judgment motion concern the '297 patent.

## RELEVANT FACTUAL BACKGROUND

Familiarity with the facts of this case, as set forth more

fully in the Court's previous decisions on the parties' motions

for summary judgment, is presumed.   See Docket ## 143, 328.   Due

to the Court's recent decision on Bausch & Lomb's motion to

dismiss, the only facts relevant to this motion, and the only

facts recited here, pertain to the '297 patent.   To summarize,

the '297 patent is titled "Nutritional Supplement to Treat

Macular Degeneration."   The patent is a composition patent[2]

which, according to its abstract, discloses a "nutritional or

dietary supplement composition that strengthens and promotes

---

[2] A composition patent includes "all compositions of two or more
substances and all composite articles, whether they be the
results of chemical union, or of mechanical mixture, or whether
they be gases, fluids, powders or solids."   Diamond v.
Chakrabarty, 447 U.S. 303, 308 (1980) (quotation omitted).

3

retinal health through the prevention, stabilization, reversal and/or treatment of visual acuity loss by reducing the risk of developing late stage or advanced age-related macular degeneration in persons with early age-related macular degeneration." Exhibit 1, '297 patent, annexed to Docket # 258 (Docket # 258-4) (hereinafter "'297 patent").

The disclosed composition stems from a ten-year research study sponsored by the National Eye Institute ("NEI") of the National Institutes of Health known as the Age-Related Eye Disease Study ("AREDS" or "AREDS 1"). '297 patent at col. 3, lines 39-46. The results of AREDS 1 indicate that a nutritional supplement containing particular doses of vitamins A (or certain substitutes thereof), C, and E, along with copper and zinc, has a "protective effect" on eye health. '297 patent at col. 3, lines 39-46. Based on NEI research, the inventors of the '297 patent developed a dietary supplement comprised of those ingredients that was designed to protect the visual acuity in persons suffering from early age-related macular degeneration by "reducing the risk of developing late stage or advanced age-related macular degeneration." '297 patent at col. 2, lines 22-36.

Following the conclusion of AREDS 1, the NEI published the results of the study and recommended a formula of ingredients for a nutritional supplement to treat early age-related macular

4

degeneration.    The NEI additionally allowed manufacturers of supplements utilizing the recommended formulations to use the term "AREDS," which is trademarked by the NEI, in the marketing and labeling of those supplements.    The NEI then began a second study ("AREDS 2") in which researchers experimented with different amounts and combinations of vitamins A (or certain substitutes thereof), C, and E, and zinc, copper, omega-3 fatty acids,    and    other    ingredients    to    treat    age-related    eye conditions.    The findings of AREDS 2 were published in 2013.

The '297 Patent Claims: At issue in the instant motion are claims 19 and 31 of the '297 patent.    Additionally, the parties broadly dispute the validity of all the asserted claims of the '297 patent, which contain the term "a daily dosage basis."

Claims 19 and 31 of the '297 patent disclose a composition of nutrients, quantified in terms of the recommended dietary allowance ("RDA"), intended to strengthen and promote retinal health.    Claim 19, which was amended following a period of reexamination, discloses

[a] composition comprising on a daily dosage basis: approximately 7 to 10 times the RDA of vitamin C, approximately 13 to 18 times the RDA of vitamin E; approximately 6 to 10 times the RDA of vitamin A in the form of beta-carotene, substituted or supplemented with lutein, zeaxanthine or a raw material combination thereof; approximately 4 to 7 times the RDA of zinc; and at least 1.6 mg and not more than approximately 2.4 mg copper into a suitable dosage form.

Amended '297 patent at col. 2, lines 6-14.    Bausch & Lomb contends that claim 19, and in particular its limitation concerning vitamin A, is valid under 35 U.S.C. § 112 and that summary judgment is appropriate.  See Docket # 258-1 at 11-17.

With respect to claim 31, the amended '297 patent discloses

[a] retina stabilizing composition comprising on a daily dosage basis: approximately 7 to 10 times the RDA of vitamin C; approximately 13 to 18 times the RDA of vitamin E; approximately 1 mg to 40 mg of lutein; approximately 0.04 mg to 40 mg of zeaxanthine; approximately 4 to 7 times the RDA of zinc; and not less than 1.6 mg and not more than 2.4 mg copper as a suitable dosage form for the stabilization of visual acuity loss in persons with early age-related macular degeneration.

Amended '297 patent at col. 2, lines 49-59.    Bausch & Lomb contends that the disclosed ranges of lutein and zeaxanthine, as well as the absence of vitamin A, do not render this claim invalid under 35 U.S.C. § 112 and argues that summary judgment is appropriate.  See Docket # 258-1 at 19-22.

As noted above, Bausch & Lomb also moves for summary judgment of validity as to all of the asserted claims of the '297 patent, which contain the term "a daily dosage basis."  See Docket # 258-1 at 8-11. On January 15, 2015, the Court issued a decision pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996) ("Markman") construing the term "on a daily

6

dosage basis" to mean "the total amount to be ingested in a day." Docket # 130 at 20-22.

## DISCUSSION

### I. Legal Standard

As always, summary judgment in a patent case is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Union Carbide Corp. v. American Can Co., 724 F.2d 1567, 1571 (Fed. Cir. 1984) ("[T]he statutory purposes of the grant of summary judgment under Fed. R. Civ. P. 56 are without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard." (citation omitted)). "By its very terms, the standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. When deciding whether a genuine issue of material fact exists, the court must resolve all inferences and ambiguities in favor of the party

7

against whom summary judgment is sought.   Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

The burden of showing the absence of any issue of material fact rests with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   "Once this showing is made, the non-moving party may not rely solely on conclusory allegations, conjecture, and speculation, but must come forward with specific facts demonstrating that there is a genuine issue for trial." Lee v. Accessories by Peak, 705 F. Supp. 2d 249, 253 (W.D.N.Y. 2010) (citation and quotation omitted).   If, after considering the evidence in the light most favorable to the non-moving party, the court determines that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

## II. Validity

Section 282 of the Patent Act allows for an alleged infringer to assert, among other defenses, invalidity of the patent.   See 35 U.S.C. § 282.   When asserting an invalidity defense, the alleged infringer is arguing "that the patent never should have issued in the first place." Microsoft Corp. v. i4i

8

Ltd. P'ship, 564 U.S. 91, 95-96 (2011) (citation omitted). However, a patent is presumed valid, and each claim of a patent is presumed valid independently of the other claims. 35 U.S.C. § 282(a). The burden of proving the invalidity of a patent rests with the party asserting it and can only be met by clear and convincing evidence. Microsoft Corp., 564 U.S. at 95 ("We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence."). In the instant motion, Bausch & Lomb seeks summary judgment of three separate invalidity defenses raised by Vitamin Health: written description, enablement, and indefiniteness

Written Description: A patent's specification must "contain a written description of the invention . . . ." 35 U.S.C. § 112(a). Whether a patent satisfies written description is a question of fact that must be met by clear and convincing evidence. Centocor Ortho Biotech, Inc. v. Abbott Labs., 636 F.3d 1341, 1347 (Fed. Cir. 2011) (citations omitted). "That question is amenable to determination at the summary judgment stage and may be based 'solely on the face of the patent specification.'" Stored Value Solutions, Inc. v. Card Activation Tech., Inc., 796 F. Supp. 2d 520, 527 (D. Del. 2011) (quoting Centocor Ortho Biotech, 636 F.3d at 1347).

To satisfy the written description requirement, the patent's description "must clearly allow persons of ordinary

skill in the art to recognize that the inventor invented what is claimed." Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (quotation and citation omitted). Put differently, after "an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art," the patent "must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed" at the time the patent application was filed. Id. "[W]hile the description requirement does not demand any particular form of disclosure, or that the specification recite the claim invention in haec verba, a description that merely renders the invention obvious does not satisfy the requirement." Id. at 1352 (citations omitted). In short, "if the claimed invention does not appear in the specification, . . . the claim . . . fails regardless whether one of skill in the art could make or use the claimed invention." Id. at 1348.

Enablement: Similar to written description, enablement requires that the patent describes "the invention, and . . . the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains" to make and use it. 35 U.S.C. § 112(a). This requirement is intended to "ensure that the public knowledge is enriched by the patent specification to a degree at

least commensurate with the scope of the claims." Warner-Lambert Co. v. Teva Pharms. USA, Inc., 418 F.3d 1326, 1336-37 (Fed. Cir. 2005) (quotation and citation omitted). "Accordingly, . . . the specification must provide sufficient teaching such that one skilled in the art could make and use the full scope of the invention without undue experimentation." Id. (citations omitted); see also In re Wands, 858 F.2d 731, 736-37 (Fed. Cir. 1988) ("Enablement is not precluded by the necessity for some experimentation such as routine screening. However, experimentation needed to practice the invention must not be undue experimentation.").

Whether a person of ordinary skill in the art could make and use the claimed invention without undue experimentation is a legal question with factual underpinnings. Warner-Lambert Co., 418 F.3d at 1337 (citation omitted); see also Spectra-Physics, Inc. v. Coherent, Inc., 827 F.2d 1524, 1533 (Fed. Cir. 1987) ("Although enablement is ultimately a question of law, this court has recognized that there may be underlying factual issues involved." (citations omitted)). Moreover, there are a number of factors for the court to consider in determining whether a patent's specification requires undue experimentation, including the nature of the invention, the state of the prior art, and the breadth of the claims. See In re Wands, 858 F.2d at 737

11

(providing eight-part balancing test to determine whether a disclosure requires undue experimentation).

**Indefiniteness:** Indefiniteness stems from Section 112 of the Patent Act, which requires that a patent's specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention" at the time the patent was filed. Nautilius, Inc. v. Biosig Instruments, Inc., ___ U.S. ___, 134 S. Ct. 2120, 2124 (2014). Patent claims "must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." Id. (quotation and citation omitted). "A determination of claim indefiniteness is a legal conclusion that is drawn from the Court's performance of its duty as the construer of patent claims." Intel. Corp. v. VIA Tech., Inc., 319 F.3d 1357, 1365 (Fed. Cir. 2003) (quotation and citation omitted). It is, however, "amenable to resolution by the jury where the issues are factual in nature." BJ Servs. Co. v. Halliburton Energy Servs., Inc., 338 F.3d 1368, 1372 (Fed. Cir. 2003).

### V. Validity of the '297 Patent

In the instant motion, Bausch & Lomb moves for summary judgement of validity, arguing that Vitamin Health has failed to prove that a genuine dispute of material fact exists to sustain its invalidity arguments as to the '297 and '522 patents and that Bausch & Lomb is entitled to a judgment as a matter of law. See Docket # 258-1. However, as noted above, the claims of the '522 patent are no longer at issue in this litigation. Accordingly, as to the '522 patent, Bausch & Lomb's motion for summary judgment of validity is **moot**. The asserted claims of the '297 patent will be addressed below.

**"On A Daily Dosage Basis" Claims:** First, Bausch & Lomb argues that summary judgment is appropriate as to Vitamin Health's assertion that the claims of the '297 patent, which all recite the "on a daily dosage basis" limitation, are indefinite. See Docket # 258-1 at 8-11. Bausch & Lomb contends that Vitamin Health is re-litigating the claim construction, noting that this Court's Markman decision resolved any dispute as to the definiteness of the "daily dosage" term.[3]  Id.  In response, Vitamin Health asserts that the Court's construction of the "daily dosage" term impermissibly converted the claims of the

---

[3] The Court construed the term "on a daily dosage basis" to mean "the total amount to be ingested in a day."  Docket # 130 at 20-22.

'297 patent, which is a composition patent, into method claims. See Docket # 297 at 24-25.

For the reasons iterated in this Court's Markman decision, Docket # 130, and its Decision & Order on Bausch & Lomb's motion for summary judgment of infringement, Docket # 328, I reject defendant's indefiniteness argument as to the "daily dosage" limitation of the '297 patent. While Vitamin Health is correct in noting that a single claim may not cover both a product and a method of use of that product, see IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1384 (Fed. Cir. 2005), it is mistaken in applying that premise to the '297 patent's claims. As this Court has explained, the "daily dosage" term was not construed to be an order or mandate, but rather to be a clarifying term. See Docket # 130 at 21-22. It exists to recite the capabilities of the claimed composition and provide context to the invention, not to require daily usage on the part of consumers. Finding that the "daily dosage" term does not "require the user of the recited system to take specific action," this Court is unwilling to apply the narrow rule established by IPXL Holdings to hold the asserted claims indefinite. See Bayer Pharma AG v. Watson Labs., Inc., No. CV 12 1726 LPS CJB, 2014 WL 4954617, at *6 (D. Del. Sept. 30, 2014) (explaining that "the [IPXL Holdings] rule does not apply to claims containing language simply describing a system as well as

14

the capabilities of the claim system; rather the rule applies to claims describing a system that also require the user of the recited system to take specific action" (string citation omitted)).   Instead, as it has done before, the Court holds that the "daily dosage" term is not a method claim, and defendant's indefiniteness argument merits no relief.   Accordingly, Bausch & Lomb's motion for summary judgment of validity on this issue is **granted.**

**Claim 19 of the '297 Patent:** Bausch & Lomb next argues that it is entitled to summary judgment because Vitamin Health failed to substantiate its invalidity arguments as to claim 19 of the '297 patent.   See Docket # 258-1 at 11-17.   Vitamin Health, in turn, asserts that, because claim 19 calls for "approximately 6 to 10 times the RDA of vitamin A in the form of beta-carotene, substituted or supplemented with lutein, zeaxanthine or a raw material combination thereof," and because the patent's specification states that the amount of lutein, zeaxanthine, or combination thereof required "depend[s] upon" whether vitamin A is being supplemented or substituted, the claim is invalid for indefiniteness, lack of written description, and enablement. See Docket # 297 at 15-22.   To illustrate their point, Vitamin Health points to, among other things, the lutein specification in the '297 patent, which states that "[p]referably each tablet of a four tablet per day dosage regime could provide

15

approximately 0.25 to 10 mg of lutein for a total daily dosage of approximately 1 to 40 mg depending upon whether lutein is used to supplement or substitute beta-carotene and/or zeaxanthine." '297 patent, col. 7, lines 54-57.

As to indefiniteness, the Court finds that Vitamin Health has failed to identify a genuine dispute of material fact to present to the jury. Instead, Vitamin Health relies on discrediting the expert testimony of Dr. Elizabeth Johnson to argue that claim 19 fails to inform a person of ordinary skill in the art about the scope of the claimed composition with reasonable certainty. Docket # 297 at 21-22. Unable to identify any legitimate factual dispute, the Court concludes that its only remaining task is to perform its duty as construer of the patent and determine whether the claim is indefinite. Intel. Corp. v. VIA Tech., Inc., 319 F.3d 1357, 1365 (Fed. Cir. 2003) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the Court's performance of its duty as the construer of patent claims." (quotation and citation omitted)). To provide clarity on whether Bausch & Lomb is entitled to judgment as a matter of law, the Court permits the parties to present any competing expert testimony on this issue, as well as introduce exhibits and evidence in support of their positions, to the Court at trial. Accordingly, Bausch & Lomb's

motion for summary judgment of validity as to this issue is denied.

Additionally, the Court finds that no genuine dispute of material fact exists with respect to enablement. Again, based on the parties' submissions, Vitamin Health relies on its own experts' interpretations of the significance of undisputed facts in the '297 patent's specification and prosecution history to conclude that a person of ordinary skill in the art would be unable to rely on the patent to make and use the claimed supplement. See Docket # 297 at 18-21. Having identified no specific dispute requiring a factual determination from the jury, the Court is left to consider the parties' battling experts' opinions and decide whether a person of ordinary skill in the art could make and use the claimed invention without undue experimentation. Warner-Lambert Co., 418 F.3d at 1337 ("[T]he ultimate determination of whether one skilled in the art could make and use the claimed invention without undue experimentation is a legal one . . . ."). In making this assessment, I find that additional expert testimony and supporting exhibits and evidence will clarify the parties' competing interpretations of the patent's specification and other undisputed facts. Accordingly, summary judgment on this issue is not appropriate at this juncture.

17

With respect to written description, however, the Court finds that Bausch & Lomb has failed to meet its burden under the summary judgment standard. Based on the parties' briefings and the competing expert testimony submitted, the Court concludes that reasonable minds may differ as to whether a person of ordinary skill in the art would be able to recognize the claimed invention based on an objective inquiry into the contents of the patent's specifications. See Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010); see also Scanner Tech. Corp. v. Icos Vision Sys. Corp., N.V., 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003) (finding that conflicting evidence from expert witnesses on what a person of ordinary skill in the art would know presents a question of fact as to written description for the jury to determine). Since written description is undeniably a question of fact, how a person of ordinary skill in the art would have interpreted the "depending upon" language in the patent's specification is a determination for the jury to make. Falko-Gunter Faklner v. Inglis, 448 F.3d 1357, 1363 (Fed. Cir. 2006) ("Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date." (citation omitted)). Accordingly, Bausch & Lomb's motion for summary judgment of invalidity on written description is **denied** as to claim 19 of the '297 patent.

18

**Claim 31 of the '297 Patent:** Bausch & Lomb also moves for summary judgment of invalidity as to claim 31 of the '297 patent based on Vitamin Health's alleged failure to sufficiently prove a lack of written description and enablement.   Docket # 258-1 at 12-22.   Bausch & Lomb contends that the claim, despite not requiring any amount of vitamin A in the form of beta-carotene, properly describes the claimed composition because vitamin A is a preferred, but not essential, ingredient.   Id. at 17-19. Bausch & Lomb also contends that the claim, which discloses a range of "approximately 1 mg to 40 mg of lutein" and "approximately 0.04 mg to 40 mg of zeaxanthine," is valid because these limitations are "described, word-for-word, in the specifications" and the claim permits a person of ordinary skill in the art to make and use the composition without undue experimentation.   Id. at 12-17, 20-22.   In response, Vitamin Health argues that the patent's specification repeatedly refers to vitamin A as one of five "essential" ingredients and that any replacements for vitamin A – which, according to the specification, are limited to lutein, zeaxanthine, or a lutein-zeaxanthine combination – are not sufficiently described or enabled by the patent's specifications, which states that the amount of lutein and zeaxanthine required to create the claimed composition "depend[s] upon" whether vitamin A is being supplemented or substituted.   Docket # 297 at 22-24.

In applying the written description standard to the instant motion, I find that Vitamin Health has sufficiently demonstrated the existence of a factual dispute so as to preclude summary judgment. It is well-established that written description presents a question of fact amenable to determination by the jury. See AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc., 759 F.3d 1285, 1297 (Fed. Cir. 2014). That question, in short, asks whether a person of ordinary skill in the art would be able to clearly "recognize that the inventor invented what is claimed" by the patent. Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (quotation and citation omitted). Here, Vitamin Health has presented expert testimony suggesting that a person of ordinary skill in the art would not clearly find that the claimed ranges of lutein and zeaxanthine can properly supplement or substitute vitamin A based on the '297 patent's specification language. See Docket # 297 at 22-23; see also Scanner Tech. Corp. v. Icos Vision Sys. Corp., N.V., 253 F. Supp. 2d 624, 634 (S.D.N.Y. 2003) (finding that expert witnesses presenting conflicting evidence on what a person of ordinary skill in the art would know presents a question of fact as to written description for the jury to determine). With respect to the second written description argument, after reviewing the evidence in a light most favorable to Vitamin Health, as this Court is obligated to do, I again

find that a genuine issue of material fact exists that precludes a grant of summary judgment. Reasonable minds may differ, based on expert witness testimony, on whether the claim, which discloses a range of "approximately 1 mg to 40 mg of lutein" and "approximately 0.04 mg to 40 mg of zeaxanthine," satisfies written description. Indeed, a reasonable jury could conclude that the "depending upon" language in the patent's specification would inform a person of ordinary skill in the art that the inventor of the '297 insufficiently described the claimed invention. Accordingly, Bausch & Lomb's motion for summary judgment of invalidity as to claim claim 31 of the '297 patent on this basis is **denied**.

Finally, with respect to the enablement argument as it relates to claim 31 of the '297 patent, I find that Vitamin Health has failed to identify a genuinely disputed issue of fact that must be resolved by the jury before the Court can make its legal determination. Once again, this issue turns on the interpretation of the parties' experts' opinions on, among other things, the patent's prosecution history. See Docket ## 258-1 at 14-17, 297 at 18-21. With no ascertainable issue of fact for the jury to resolve, the only question remaining is a legal one informed by the parties' battling expert testimony: whether a person of ordinary skill in the art could make and use the claimed invention without undue experimentation. Warner-Lambert

Co., 418 F.3d at 1337 ("[T]he ultimate determination of whether one skilled in the art could make and use the claimed invention without undue experimentation is a legal one . . . ."). In light of the parties' experts' disagreements, the Court finds that the presentation of clarifying expert testimony, exhibits, and evidence at trial would assist the undersigned in making a determination on enablement. Accordingly, Bausch & Lomb's motion for summary judgment of validity on this issue is **denied.**

## CONCLUSION

For the reasons stated, Bausch & Lomb's motion for summary judgment of invalidity is **granted in part and denied in part.**

**SO ORDERED.**

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: August 1, 2016
Rochester, New York

22