1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4

5

6

7   - - - - - - - - - - - - - X
    BAUSCH & LOMB, INC., et al.,          13-CV-6498(JWF)
8                 Plaintiffs
    vs.
9                                         Rochester, New York
    VITAMIN HEALTH, INC.                  July 29, 2016
10                Defendant               8:30 a.m.
    - - - - - - - - - - - - - X
11

12

13

14
                        TRANSCRIPT OF PROCEEDINGS
15        BEFORE THE HONORABLE JONATHAN W. FELDMAN
                   UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23
    COURT REPORTER:      Christi A. Macri, FAPR-CRR
24                       Kenneth B. Keating Federal Building
                         100 State Street, Room 2120
25                       Rochester, New York 14614

1                    **A P P E A R A N C E S**

2
HARTER, SECREST AND EMERY, LLP
3   BY: ERIKA N.D. STANAT, ESQ.
1600 Bausch & Lomb Place
4   Rochester, New York 14604
              - and -
5   FITZPATRICK, CELLA, HARPER & SCINTO
BY: DAMIEN N. DOMBROWSKI, ESQ.
6        STEVEN C. KLINE, ESQ.
1290 Avenue of the Americas
7   New York, New York 10104-3800
Appearing on behalf of the Plaintiffs
8

9
CARLSON GASKEY & OLDS, P.C.
10  BY: STEVEN C. SUSSER, ESQ.
        BRIAN S. TOBIN, ESQ.
11       MICHAEL A. SZYPA, ESQ.
400 West Maple Road, Suite 350
12  Birmingham, Michigan 48009
Appearing on behalf of the Defendant
13

14

15

16

17

18

19

20

21

22

23

24

25

**<u>P R O C E E D I N G S</u>**

\* \* \*

1      **THE CLERK:** Judge Feldman presiding. Please be

2 seated. This is Bausch & Lomb vs. Vitamin Health, 13-CV-6498.

08:16:59AM 3 July 29, 2016.

4      **MAGISTRATE JUDGE FELDMAN:** Good morning. We've got

5 a lot to do here and not a lot of time to do it in so I want

6 to just go over what I want to accomplish.

7      I want to talk about rulings on depositions; I want

08:36:35AM 8 to have some oral argument on the motion to dismiss; we need

9 to address the designations of excerpts of deposition

10 testimonies on the Doctrine of Equivalents -- Mr. Meyering,

11 Mr. Balaram and Mr. Ferris; I want to talk about the validity

12 summary judgment motion filed by Bausch & Lomb; and Vitamin

08:37:02AM 13 Health's summary judgment motion on the issue of prosecution

14 estoppel; I want to talk about what questions will be

15 presented to the jury on enablement; I want to talk a little

16 bit about the schedule next week; and any changes to the

17 witness list.

08:37:28AM 18      So unless somebody has a particular item they want

19 to address first, I thought I would just go in order here.

20      **MR. SUSSER:** That's fine, Your Honor.

21      **MAGISTRATE JUDGE FELDMAN:** Okay. Starting with the

22 ruling on the depositions, I'm almost through them and I will

08:37:44AM 23 give you my rulings, at least preliminarily, Monday morning

1 before we start with jury selection.

2      I assume most of these depositions are video

3 depositions?

4      **MR. DOMBROWSKI:** I think roughly half and half.  I

08:38:01AM 5 don't think there's --

6      **MAGISTRATE JUDGE FELDMAN:** Well, I know you would

7 have to make on the video depositions edits depending on my

8 rulings.  So I don't know how much time you need to do that,

9 but you might want to consider the order that you play the

08:38:13AM 10 depositions, the video depositions, if you need time to do

11 that.

12      **MR. KLINE:** Well, I think if we have the ruling by

13 Monday, I know none are going on on Monday so --

14      **MAGISTRATE JUDGE FELDMAN:** Okay, fine.  Then let's

08:38:28AM 15 get to some argument on the motion to dismiss, which I know

16 the timing of this is kind of problematic, but I think we've

17 got to get it resolved.

18      So who should I ask questions to from Bausch & Lomb

19 here?

08:38:44AM 20      **MR. DOMBROWSKI:** I can answer questions on that.

21      **MAGISTRATE JUDGE FELDMAN:** Okay.  You sued Vitamin

22 Health for products which you allege have infringed or are

23 currently infringing on both your '297 and your '522 patents,

24 right?

08:39:02AM 25      **MR. DOMBROWSKI:** Correct.

1          **MAGISTRATE JUDGE FELDMAN:** Okay.  Are you aware of

2  any current Vitamin Health product that infringes on the '522

3  patent that you're not including in your complaint?

4          **MR. KLINE:** We're not aware of any.

08:39:14AM 5          **MAGISTRATE JUDGE FELDMAN:** Okay.  I mean, clearly if

6  they were marketing something and making money off of it, you

7  would be concerned about it if it violated your patent?

8          **MR. DOMBROWSKI:** I think that's right.

9          **MAGISTRATE JUDGE FELDMAN:** Okay.  Now, we're

08:39:28AM 10  scheduled to commence the trial on Monday.  I think your

11  motion was filed on Wednesday, but yesterday I sent you this

12  *Hillman* case because I was interested in the case or

13  controversy discussion in there.

14          I was well aware that it was a case involving a

08:39:44AM 15  defendant who had filed a declaratory judgment action on

16  patent validity, but it was the case or controversy discussion

17  related to that invalidity claim that was of interest to me.

18          Now, in that case the plaintiff offered to dismiss

19  the infringement claim with prejudice, which included a

08:40:04AM 20  covenant not to sue for any infringing acts for past or

21  current products.

22          And the defendant there argued that the declaratory

23  judgment action on validity would survive that because they

24  wanted a promise not to sue for any future products.

08:40:24AM 25          Is that your reading of the case?

1          **MR. DOMBROWSKI:** It is.

2          **MAGISTRATE JUDGE FELDMAN:** Okay.  Now here you're

3    moving to dismiss the '522 patent with prejudice.  Is it

4    inherent on a dismissal with prejudice under the facts here

08:40:40AM 5    that you're not going to be suing on any past or current

6    products?

7          **MR. DOMBROWSKI:** I think that's correct.  I think

8    the claim preclusion rules, you know, in a later action it

9    would be limited to the products that were essentially the

08:40:52AM 10    same as the products in the --

11          **MAGISTRATE JUDGE FELDMAN:** Okay.  And all the

12    products that you are aware of that are infringing on the '522

13    patent are within the purview of this motion to dismiss with

14    prejudice?

08:41:03AM 15          **MR. DOMBROWSKI:** Current, the current accused

16    products, correct.

17          **MAGISTRATE JUDGE FELDMAN:** You're not aware of any

18    products that infringe or allegedly infringe that you haven't

19    sued on?

08:41:11AM 20          **MR. DOMBROWSKI:** That's my understanding, yeah.

21          **MAGISTRATE JUDGE FELDMAN:** Okay.  And it's the same

22    analysis with respect to the false advertising claims, the

23    action would be dismissed with prejudice as to the products

24    covered by the complaint, correct?

08:41:24AM 25          **MR. DOMBROWSKI:** Correct.

1          **MAGISTRATE JUDGE FELDMAN:** Okay.  Who do I ask

2   questions to here?

3          **MR. TOBIN:** Me, Your Honor.

4          **MAGISTRATE JUDGE FELDMAN:** Like the defendant

08:41:40AM 5   seeking the declaratory judgment in *Hillman*, you agree that

6   dismissal with prejudice is essentially a covenant not to sue

7   you for any past or current products that may infringe on

8   your -- on the '522 patent?

9          **MR. TOBIN:** Your Honor, I believe that with *Hillman*,

08:41:58AM 10   there was both the dismissal with prejudice as well as the

11   covenant not to sue.

12          **MAGISTRATE JUDGE FELDMAN:** I understand that, but as

13   a practical matter, wouldn't a dismissal with prejudice give

14   you the same benefit as a covenant not to sue when you have a

08:42:13AM 15   representation here that unless there's some product you're

16   hiding from them that you haven't marketed, that it covers all

17   the products?

18          **MR. TOBIN:** Well --

19          **MAGISTRATE JUDGE FELDMAN:** Past or current products?

08:42:28AM 20          **MR. TOBIN:** -- I think there's a question as to what

21   past or current or future products they're referring to.

22          **MAGISTRATE JUDGE FELDMAN:** What is the question?

23   What product do you have that is not within the scope of this

24   lawsuit?

08:42:46AM 25          **MR. TOBIN:** I believe there's at least one product

1  that -- and I don't know if it's within the scope of this

2  lawsuit.  You know, the four corners of the complaint were

3  pretty broad, the contentions were different.

4  But if you look at the four corners of the

08:42:58AM 5  complaint, I think they're accusing all of our AREDS and AREDS

6  2 products of infringing, but there are certain products of

7  ours which they haven't pursued further.

8  **MAGISTRATE JUDGE FELDMAN:** Okay.  In your memo you

9  stated you -- even with the dismissal with prejudice, you're

08:43:14AM 10  open to suit on current products that are not included in the

11  '522 complaint.

12  What is that product you're referring to?

13  **MR. TOBIN:** Any product that wouldn't be in the

14  complaint.  I mean --

08:43:25AM 15  **MAGISTRATE JUDGE FELDMAN:** You know your products.

16  What product are you worried about?

17  **MR. TOBIN:** Well, I think the question is we're

18  worried about the current as well as the future products here,

19  Your Honor.

08:43:33AM 20  **MAGISTRATE JUDGE FELDMAN:** Take future out of it,

21  we'll get to future.

22  But current or past product -- past product doesn't

23  really matter, but current product, what current product are

24  you worried about?

08:43:43AM 25  **MR. TOBIN:** I think as it relates to the current

products, Your Honor, the one product that I can think of offhand here today they have not pursued anything on would be the Viteyes Complete product as an example.

**MR. KLINE:** I'm not certain what the formulation of the Viteyes Complete product is.  I mean, we've tried to identify all the ones that had the amounts of the ingredients --

**MAGISTRATE JUDGE FELDMAN:** Is this being sold on your website?  Is this -- what is the composition of the Viteyes?

**MR. TOBIN:** It's just a variation of our other formulas.  It is available on the company's website, or at least it was.  I don't know if it still is being sold, but it certainly was.

**MR. KLINE:** Well, I mean, if he can tell me what the amounts of the ingredients are, I mean, if it was probably being sold when this lawsuit began and we were aware of it, I'm assuming it was outside the patent, but --

**MAGISTRATE JUDGE FELDMAN:** Okay.  You take this patent very seriously.  I have to believe that if there was something out there that was conceivably within the patent, you would be suing on it.

You also mention in your memorandum of law that you were worried about modifications to current products.  What's the difference between a future product and a modification to

1   a current product?

2        **MR. TOBIN:** I think in some instances they would

3   fall in the same category.  It would -- it could be a future

4   product if there's a modification made.

08:45:13AM 5        For example, if one of the components was changed

6   or the concentration of one of the components was changed.

7        **MAGISTRATE JUDGE FELDMAN:** That would be a future

8   product if you changed it?  Okay, they're the same thing.

9        So the point of *Hillman* was that even though the

08:45:25AM 10   defendant claimed there was a case or controversy over future

11   products, the Court disagreed and said that a case or

12   controversy sufficient to maintain jurisdiction can't be based

13   on a fear of litigation over future products.

14        If the dismissal here immunizes you from suit for

08:45:44AM 15   infringement over past or current products that could possibly

16   infringe on the '522 patent, isn't all you're left with then a

17   fear of litigation of a product that has yet to come to

18   market, and under the holding of *Hillman*, is that not enough

19   for a case or controversy?

08:46:07AM 20        **MR. TOBIN:** Well, I think, number one, it's the

21   products that are -- that could have been covered by the

22   complaint.  So there's also the issue with that

23   Viteyes Complete product.

24        But I would note, Your Honor, I think the proposal

08:46:17AM 25   by Bausch indicates that they want it not just dismissed with

period.  They want it dismissed with prejudice with several

qualifiers, one of which being that it is limited in some way

to Vitamin Health; another way that it's limited to the

certain products.

08:46:36AM 5        And I think that there's a difference between

dismissing the case with prejudice period and dismissing the

case with prejudice with additional caveats.

8        **MAGISTRATE JUDGE FELDMAN:** I understand.  Which is

9 why I've been exploring your concern about additional caveats.

08:46:52AM10 There isn't a single product that I know of that you've

mentioned to me that you've created a record that you have any

reason to be concerned about.  You know your products.

13        **MR. TOBIN:** I think, Your Honor, I mean, this could

be something to dispute another day and there could be other

08:47:07AM15 issues that come up as a result of this.

16        I think that if they're looking to have this case

dismissed with prejudice, and if this case is going to be

dismissed with prejudice, especially when we've gone

through -- I mean, and we've spent a long time on this, we

08:47:19AM20 don't want to face it again.

21        You know, defendant just asked for a *Markman* ruling

three weeks ago on an issue and thereby rendered the claim

invalid.

24        **MAGISTRATE JUDGE FELDMAN:** I feel for you, okay?  I

08:47:32AM25 do.  But I've got to look at the law on this.

1          And when you look at prejudice, I think the law is

2    if you're put in the same spot you would be put in had you

3    prevailed, okay?  You have no legal prejudice.  Those are the

4    cases that I've read.

08:47:56AM 5          In other words, it's like you'd gone to trial and

6    prevailed on this.  You get the same benefits you would have

7    gotten if the jury verdict came in your favor on the '522

8    patent.

9          **MR. TOBIN:** Your Honor, I think what you're saying

08:48:07AM 10   is definitely -- I understand where you're coming from.

11   I'll say this:  If the case is dismissed with prejudice

12   period, in some ways that would be similar to a jury rendering

13   a verdict.

14          If the claim is dismissed with prejudice with

08:48:24AM 15   qualifiers of any sort, that is not consistent with how the

16   jury would be ruling.

17          **MAGISTRATE JUDGE FELDMAN:** I don't know of any

18   qualifiers on a dismissal with prejudice.

19          Now, whatever preclusive effect you would have

08:48:39AM 20   gained by going to trial and winning, you get the same

21   preclusive effect.

22          **MR. TOBIN:** Understood, Your Honor.  Are you asking

23   that if there's an issue, if it's just dismissed with

24   prejudice period?

08:48:50AM 25          **MAGISTRATE JUDGE FELDMAN:** Correct.  I already said

1  I'm not going to dismiss it without prejudice.

2         **MR. TOBIN:** But if it's dismissed with prejudice,

3  there wouldn't be other qualifiers that went along with it?

4         **MAGISTRATE JUDGE FELDMAN:** No.  It would be a

08:49:01AM 5  dismissal with prejudice.

6         **MR. TOBIN:** Okay.  Your Honor, the only thing that I

7  would say that comes out of that is the additional

8  considerations that could effect Vitamin Health would be, for

9  example, as relates to these same products which are at issue

08:49:13AM 10  in this litigation and covered by the complaint in this case,

11  there could be the possibility of, for example, Vitamin

12  Health's manufacturer being sued.

13         As this Court is well aware, that's a sensitive

14  issue in this case.

08:49:25AM 15         **MAGISTRATE JUDGE FELDMAN:** It is.  But even the case

16  you cited to me, the *Dow Jones* case, you know, there was a

17  issue there about their successors or their customers, and it

18  said it didn't prevent the lack of subject matter

19  jurisdiction.

08:49:42AM 20         I understand you're trying to protect them, but I

21  don't think they would be protected if you won.

22         **MR. TOBIN:** Well, I think, Your Honor, the Court

23  pointed us to the *Hillman* case, and the *Hillman* case -- I

24  mean, those additional protections were provided, at least in

08:49:57AM 25  part, through that covenant not to sue.  And that was part of

1  the resolution of the case and controversy.

2          **MAGISTRATE JUDGE FELDMAN:** I understand that.  But I

3  don't have those customers in front of me.  They're not part

4  of this lawsuit.

08:50:09AM 5          I don't think there's anything I can do or anything

6  you would have been able to do in this lawsuit to bring them

7  in.

8          **MR. TOBIN:** I don't know that in the *Hillman* matter,

9  though, Your Honor, that the customers were part of that

08:50:19AM 10  lawsuit either.

11          **MAGISTRATE JUDGE FELDMAN:** I understand, I

12  understand.

13          **MR. DOMBROWSKI:** Your Honor, can I make one point

14  just to address his point about the qualifiers?  I think we

08:50:28AM 15  could make more clear in our motion, but the dismissal with

16  prejudice has the effect of what we're saying it would have an

17  effect of -- be limited to Vitamin Health and to the specific

18  accused products in this case.

19          So we weren't asking for additional limitations to

08:50:41AM 20  be imposed on it.  That is the effect of the dismissal with

21  prejudice on our --

22          **MAGISTRATE JUDGE FELDMAN:** Exactly.  I'm not putting

23  any qualifiers on a dismissal with prejudice.  Because if I

24  do, then it's not really truly a dismissal with prejudice and

08:50:51AM 25  the analysis is far different.

1          I think if it was a dismissal without prejudice,

2    given the status of this case and the posture in which you're

3    making the motion, it would be a lot tougher.  In fact, I

4    think I would rule in Vitamin Health's favor.

08:51:05AM 5          Okay, anything else on this issue?

6          **MR. TOBIN:** The only other issue we would note, Your

7    Honor, I don't know if it's an issue for now or for down the

8    road, but to the extent that this matter was dismissed as it

9    relates to the motion to dismiss, we would want the fees that

08:51:20AM 10  we've incurred as it relates to --

11          **MAGISTRATE JUDGE FELDMAN:** Okay, I'll get to that in

12    a minute.

13          **MR. TOBIN:** Sure.

14          **MAGISTRATE JUDGE FELDMAN:** All right. I'm ready to

08:51:26AM 15  rule on this and I'm going to read my decision into the

16    record.

17          A jury trial in this matter is scheduled to

18    commence on Monday, August 1st, 2016.

19          On Wednesday, July 26th Bausch & Lomb filed an

08:51:38AM 20  unanticipated motion for dismissal of Counts 2 and 3 of the

21    second amended complaint.

22          Their motion requested in the first instance

23    dismissal without prejudice; or in the alternative, dismissal

24    with prejudice.

08:51:53AM 25          I ordered expedited briefing, which was completed

1   yesterday.  Yesterday I also notified counsel that I was not

2   inclined to dismiss these claims without prejudice.

3        This morning we completed a hearing on this motion.

4   Based on the law and the arguments of counsel, I am granting

08:52:11AM 5   Bausch & Lomb's motion to dismiss Counts 2 and 3 with

6   prejudice.

7        Ordinarily I would issue a written decision, but

8   because this is Friday and jury selection starts Monday

9   morning, I am compelled to write -- or excuse me, I am

08:52:25AM 10   compelled to issue an oral decision which I will now read into

11  the record.

12       A voluntary dismissal with prejudice is generally

13  considered to be an adjudication on the merits with full

14  preclusive effect.  I'm citing *Bioxy, Inc. vs. Birko,*

08:52:45AM 15  *Corporation*, 935 F.Supp. 737, at page 741, which is an Eastern

16  District of North Carolina case from 1996.

17       Indeed, "it is generally considered an abuse of

18  discretion for a court to deny a plaintiff's request for

19  voluntary dismissal with prejudice."

08:53:08AM 20       I'm citing *Degussa Admixtures, Inc. vs. Burnett*,

21  471 F.Supp.2d 848, at page 852, a Western District of Michigan

22  case decided in 2007, which relied on a case called *Smoot vs.*

23  *Fox*, 340 F.2d 301, at page 303, a Sixth Circuit case decided

24  in 1964.

08:53:41AM 25       Where a plaintiff's Rule 41(a)(2) motion

1   "specifically requests dismissal with prejudice, it has been

2   held that the District Court must grant that request, relying

3   on Professors Wright and Miller's treatise Federal Practice

4   and Procedure, Section 2367, third edition published in 2008.

08:54:07AM 5            That quote was used in *United States, ex rel McLain*

6   *vs. Fluor Enterprises, Inc.*, which was an Eastern District of

7   Louisiana case decided March 15th, 2016, and is found at

8   2016 WL 1031324.

9            The granting of plaintiff's voluntary motion to

08:54:35AM 10   dismiss with prejudice essentially puts the defendant in the

11   same position as if they had gone to trial and prevailed on

12   the counts subject to dismissal.

13            The rights and remedies garnered by the defendant

14   as a result of the dismissal with prejudice are equal to those

08:54:52AM 15   obtained had there been a finding in their favor, which is why

16   there is no legal prejudice from this type of dismissal.

17            "No matter when a dismissal with prejudice is

18   granted, it does not harm the defendant.  The defendant

19   receives all that he would have received had the case been

08:55:11AM 20   completed."  That quote is from *Schwarz vs. Folloder,* 767 F.2d

21   125, at page 129, a Fifth Circuit case decided in 1985.

22            Vitamin Health opposed dismissal of the two counts

23   even with prejudice.  They have not cited to the Court any

24   cases where a court has refused to grant a dismissal with

08:55:40AM 25   prejudice, but argue that a dismissal is unfair and improper

1  without an open-ended and unrestricted promise from

2  Bausch & Lomb that Bausch & Lomb will not sue Vitamin Health

3  for not only past and current products, but also future

4  products.

08:55:55AM 5      Again, Vitamin Health has not pointed to any case,

6  patent or otherwise, in which a patent holder was required to

7  covenant not to sue for possible infringement on any future

8  product the competitor might market during the life of the

9  patent.  I could not find any such case either.

08:56:12AM 10      Indeed, the only patent case the Court found

11  relevant to this issue was *Hillman Group vs. Minute Key*, found

12  at 2014 WL 4064187, a Southern District of Ohio case decided

13  August 15th, 2014.

14      Although the facts in *Hillman* involved a patent

08:56:30AM 15  infringement action by a plaintiff in a declaratory judgment

16  action as to patent validity by the defendant, the issue of

17  case or controversy arose when the plaintiff withdrew its

18  infringement action and promised not to sue the defendant for

19  current or past products alleged to have been infringing on

08:56:47AM 20  the patent.

21      The defendant still wanted the Court to maintain

22  jurisdiction over the declaratory judgment action, but the

23  Court found there was no longer a case or controversy.

24      The Court explained as follows, and I'm quoting,

08:57:01AM 25  "as the Supreme Court has noted, plaintiff may not like --

1  excuse me, plaintiff may not obtain a declaratory judgment

2  merely because it would like an advisory opinion on whether it

3  would be liable for patent infringement if it were to initiate

4  some merely contemplated activity.

08:57:18AM 5       Plaintiff must be engaged in the actual making,

6  selling or using activity subject to an infringement charge or

7  must have made meaningful preparation for such activity.   An

8  actual controversy cannot be based on a fear of litigation

9  over future products." That's from page 5 of the *Hillman*

08:57:38AM 10  decision, and I've omitted internal quotations and citations.

11       I find the *Hillman* analysis and logic to be equally

12  applicable here.  There is no evidence that there are any

13  current or past Vitamin Health products that would not be

14  subject to the benefits afforded by dismissing the '522 claims

08:57:59AM 15  with prejudice.

16       There is no evidence or suggestion that Vitamin

17  Health has made "meaningful preparations" for future products

18  or future activity that could be considered infringing on the

19  '522 patent.

08:58:13AM 20       And as I previously explained, an actual case or

21  controversy sufficient to confer federal jurisdiction cannot

22  be based on a fear Vitamin Health may have over future

23  litigation with respect to future products.

24       The same analysis holds true for Bausch & Lomb's

08:58:30AM 25  motion to dismiss Count 3 of the complaint with respect to

1  alleged false advertising as to Vitamin Health's marketing of

2  its 25 milligram zinc products.  By dismissing these claims

3  with prejudice, Vitamin Health is put in the same position as

4  it would be had it prevailed at trial.

08:58:48AM 5       For these reasons Vitamin Health's motion to

6  dismiss claims 2 and 3 is granted.

7       Now, how does that simplify your case?

8       **MR. DOMBROWSKI:** I think for each of our experts, it

9  reduces the testimony they're going to be giving.

08:59:09AM 10       **MAGISTRATE JUDGE FELDMAN:** We would have the same

11  number of witnesses, but expert testimony would be limited to

12  the --

13       **MR. DOMBROWSKI:** Correct.  I don't think our witness

14  list changes as a result.

08:59:19AM 15       **MR. KLINE:** Doesn't remove any witnesses.  It may

16  remove some of the deposition designations, but that's --

17       **MAGISTRATE JUDGE FELDMAN:** Can you let me know by

18  the end of today?  Because I don't want to spend time going

19  over depositions that I don't have to.

08:59:31AM 20       How about from your point of view?

21       **MR. TOBIN:** Your Honor, I think it may make some

22  changes.  I've got a quick question of clarification on that,

23  though.

24       You mentioned at the end of the decision 25

08:59:40AM 25  milligram zinc products.  Just to clarify, the Order of

1  Dismissal with prejudice relates to all of Vitamin Health's

2  current products as well as the products that are covered by

3  the patent, which would include Vitamin Health's 80 milligram

4  products -- both 80 milligram zinc, 2 milligrams of copper as

09:00:01AM 5  well as 80 milligrams of zinc, 2.8 milligrams of copper.

6              **MAGISTRATE JUDGE FELDMAN:** Any false advertising

7  claim made with respect to the '522 patent is dismissed with

8  prejudice.

9              **MR. TOBIN:** On the patent side, it's any of Vitamin

09:00:15AM 10  Health's products?

11              **MAGISTRATE JUDGE FELDMAN:** Past or current products.

12              **MR. TOBIN:** Okay, thank you.

13              **MAGISTRATE JUDGE FELDMAN:** Okay, with respect to --

14              **MR. TOBIN:** Your Honor, just -- I'm sorry.  So the

09:00:35AM 15  '522 patent's claim is dismissed with prejudice as it relates

16  to any of Vitamin Health's current or former products.

17              And then the false advertising claim is just

18  dismissed with prejudice as relates to everything that was

19  described in the complaint, correct?

09:00:52AM 20              **MAGISTRATE JUDGE FELDMAN:** Do you agree with that?

21              **MR. KLINE:** I think so.  I think he's referring

22  to the false advertising claim that we had in our Count 3,

23  yeah.

24              **MAGISTRATE JUDGE FELDMAN:** Okay.  You won the false

09:01:07AM 25  advertising claim in Count 3.  Whatever -- whatever you --

1  benefit you could have gotten from that you now have.

2          **MR. SUSSER:** Your Honor, on the question of

3  streamlining -- is it okay if I sit?

4          **MAGISTRATE JUDGE FELDMAN:** Yes.

09:01:21AM 5          **MR. SUSSER:** Other than it will take out some of the

6  testimony that we would otherwise adduce, it will not change

7  our witnesses, nor materially effect the exhibits we intend to

8  put in.

9          **MAGISTRATE JUDGE FELDMAN:** How about the

09:01:32AM 10  designations?

11          **MR. SUSSER:** It may effect -- I don't think it will

12  eliminate any deponents.  It will probably, as Mr. Kline said

13  on his side, limit some of the designations.

14          **MAGISTRATE JUDGE FELDMAN:** If any of the eliminated

09:01:47AM 15  designations have objections, will you let me know by the end

16  of today?

17          **MR. SUSSER:** Yes, Your Honor.

18          **MAGISTRATE JUDGE FELDMAN:** Okay.

19          Okay, let's move then to the letters regarding

09:02:00AM 20  these designations or excerpts of Meyering, Balaram and

21  Ferris.

22          **MR. SUSSER:** Your Honor, first I want to thank the

23  Court for scheduling this hearing to discuss this.  I think

24  it's an important issue and one that will serve everyone well

09:02:16AM 25  if we can decide in advance.

1          A large portion of this case relates to the

2     allegations by Bausch & Lomb that 25 milligrams is equivalent

3     to 60 to 100 milligrams under the Doctrine of Equivalents.

4          The Doctrine of Equivalents measures insubstantial

09:02:33AM 5     differences or the same function-way-result.  Basically, it's

6     an interchangeability theory, you can interchange 25 for 80

7     and 80 for 25.

8          A second issue that's related is whether Vitamin

9     Health willfully infringed the '297 patent under the Doctrine

09:02:54AM10    of Equivalents by knowingly -- with an unjustifiably high risk

11    making, using or selling that 25 milligram product.

12         The testimony that we would like to adduce is

13    testimony -- and actually goes beyond, somewhat beyond these

14    designations -- there are other witnesses who will testify to

09:03:13AM15    it and documents that relate to it -- is Bausch & Lomb or its

16    agents, and one individual -- and at least one individual from

17    the NEI have said no, 25 is not the same or equivalent to 80

18    milligrams, which falls within the 60 to 100 range.

19         **MAGISTRATE JUDGE FELDMAN:** None of these

09:03:33AM20    designations say that.

21         **MR. SUSSER:** They do say that 25 and 80 are

22    different.  They say --

23         **MAGISTRATE JUDGE FELDMAN:** Just going over them, Mr.

24    Meyering, who is Mr. Meyering?

09:03:47AM25         **MR. DOMBROWSKI:** He's Bausch & Lomb's -- an

executive at Bausch & Lomb.

**MAGISTRATE JUDGE FELDMAN:** Okay.

**MR. DOMBROWSKI:** Most of that testimony, the answers were I don't know.

09:03:54AM **MAGISTRATE JUDGE FELDMAN:** That's what I'm saying. The first one I got -- and I appreciate you blowing this up because usually I have to wear these, but when I got it I didn't have to wear it.

Do you believe it also covers 25 milligrams of 09:04:05AM zinc? I'm looking at the excerpt that was given to me.

Witness: I don't know.

**MR. SUSSER:** I don't know what you mean by equivalent he writes -- or his answer is.

**MAGISTRATE JUDGE FELDMAN:** I don't have that. I 09:04:23AM just have one page.

**MR. SUSSER:** Oh, sorry.

**MAGISTRATE JUDGE FELDMAN:** That's what I have.

**MR. SUSSER:** Let me get Meyering. I just -- before we go down this route, and I'm happy to -- these are 09:04:35AM representative of the issue.

**MAGISTRATE JUDGE FELDMAN:** Well, if these are your best representations, I think we have a problem. Let me tell you where I'm coming from. You know, the cases that I've read say this Doctrine of Equivalents is a question -- Doctrine of 09:04:51AM Equivalents is a question for experts, or at least a person of

1  ordinary skill in the art.

2          I don't know from these designations that even if

3  this was a person of ordinary skill in the art and you

4  qualified for that position, that there's anything here that

09:05:15AM 5  would be admissible.

6          Meyering is I don't know, at least -- and all I'm

7  going on is the excerpts you provided.

8          Balaram, who is Balaram?

9          **MR. KLINE:** She's a former Bausch & Lomb employee

09:05:27AM 10  who was in the Medical Department, I guess, helping with

11  marketing.

12          **MR. DOMBROWSKI:** Can I add, Your Honor, too, that

13  Meyering is a marketing person, too, to give you his role at

14  Bausch & Lomb.

09:05:37AM 15          **MAGISTRATE JUDGE FELDMAN:** I don't know who these

16  people are.  I'm just basing it on what I have.

17          Are those two products equivalent?

18          Answer:  I don't know what you mean by equivalent.

19          Question: The same.

09:05:46AM 20          Answer: They're different.  Obviously one has more

21  zinc than the other.

22          Okay.  Do they have the same effect?

23          I don't know.  Effect for what?

24          It goes on, and on the next page at line 14 and 15,

09:06:01AM 25  the same purpose as it relates to age-related macular

1    degeneration?

2           Answer:  I don't know.

3           The last page:  I don't have the expertise to say

4    categorically yes.

09:06:12AM 5           Question:  So you don't know?

6           Answer: Yes, I don't know.

7           Now, I want to leave the Ferris thing alone for a

8    second, but with respect to those two, unless there's a better

9    foundation made that this is a person of skill in the art

09:06:26AM 10   that's capable of giving an opinion on the Doctrine of

11   Equivalents as to whether the differences are insubstantial, I

12   wouldn't allow it on the basis of relevance.

13          There's nothing -- there's no opinion here upon

14   anything.

09:06:44AM 15          **MR. SUSSER:** Your Honor, if I may?

16          **MAGISTRATE JUDGE FELDMAN:** Yeah.

17          **MR. SUSSER:** Couple things.  I'm happy to -- there

18   are more -- there are more references.  We're trying, in the

19   interest of time --

09:06:54AM 20          **MAGISTRATE JUDGE FELDMAN:** I thought you gave me

21   your best ones?

22          **MR. SUSSER:** Actually, they're not the best ones,

23   okay?  So we have -- if you want better ones where they

24   actually say they're not the same -- with AREDS 2 was not

09:07:08AM 25   powered to test equivalence.

1          Remember, what they're saying, Your Honor, is 25 is

2    obviously different from 80, but AREDS 2 converts 80 into 25.

3    AREDS 2 basically says they're equivalent.

4          And there are witnesses, their witnesses, several,

09:07:24AM 5    who say the AREDS 2 study is not powered to make -- to test

6    equivalence.  It's not designed to test equivalence.

7          And Dr. Bressler, their expert, says that.  Rick

8    Ferris, Dr. Ferris of the NEI, says that.  Emily Chew of the

9    NEI says that.

09:07:43AM 10         **MAGISTRATE JUDGE FELDMAN:** Who is going to be

11   testifying on the Doctrine of Equivalents for Bausch & Lomb?

12         **MR. DOMBROWSKI:** Dr. Johnson.

13         **MAGISTRATE JUDGE FELDMAN:** Dr. Johnson, you can

14   cross-examine her until the cows come home on it.

09:07:52AM 15        **MR. SUSSER:** But, Your Honor, what we would want to

16   do -- what I think would be very important for the jury,

17   especially since it's the subjective -- we're being attacked

18   for willful infringement, that we knowingly infringed.

19         **MAGISTRATE JUDGE FELDMAN:** That's your state of

09:08:07AM 20  mind.  Whether they thought it was equivalent or not is

21   irrelevant to your state of mind.

22         **MR. SUSSER:** Well, I don't think it's irrelevant,

23   Your Honor, insofar as if the jury hears that Bausch, Bausch

24   representatives, Bausch's expert, the NEI believe (a) 25 is

09:08:27AM 25  not equivalent to 80; and (b), that the AREDS 2 study was not

1  designed to test that equivalency, the jury will be more

2  likely to believe Aaron's view that he did not think that they

3  were equivalent.

4  **MAGISTRATE JUDGE FELDMAN:** I haven't seen that

09:08:40AM 5  testimony, if you have that testimony.  It's just not in the

6  submissions that you made.

7  Now, we don't have a lot of time here.  I'm basing

8  my ruling on what you've given me.  If you have other evidence

9  that's better than this, I'll consider it, but I forget the

09:08:54AM10  name of the case, it's the Aqua something case, Federal

11  Circuit, which lays out what you need to do to prove the

12  Doctrine of Equivalents.

13  And don't get me wrong here, okay?  I don't think

14  their position on the Doctrine of Equivalents is a slam dunk.

09:09:15AM15  Far from it, okay?  Just because they say it's equivalent

16  doesn't mean it's equivalent.

17  And whether the jury would find 25 and 80

18  equivalent, you know, that's what the jury's for.

19  But the proof that's admissible on that has really

09:09:30AM20  been defined by the Federal Circuit.  And it's got to be from

21  someone, not a lay person, but someone who is qualified as a

22  person of ordinary skill in the art.

23  I don't necessarily think it has to be someone who

24  is qualified as an expert, but I do think it has to be someone

09:09:53AM25  who is qualified as a person of skill in the art, to offer

1    their opinion on either the three factor test or on whether

2    the differences are insubstantial; whether the competitor's

3    changes are so insubstantial that it's unfair to the patent

4    holder.

09:10:15AM 5          And, you know, what I would prefer, if you make a

6    further motion on this, is to give me some cases where this

7    type of testimony you're offering would be admissible.

8          I'm hesitating on the third witness, which is the

9    inventor.  Is this witness testifying live, or no?

09:10:39AM 10         **MR. DOMBROWSKI:** No.

11         **MAGISTRATE JUDGE FELDMAN:** Okay.  You know, the

12   excerpts that you gave me, I think they would be a person

13   qualified in the skill of the art -- or excuse me, a person

14   ordinary skill in the art, regardless of whether they're

09:10:55AM 15  proffered as an expert or not.

16         But the testimony you're giving me doesn't support

17   what you want to use it for.  You know, I don't know what you

18   mean by equivalent.  They're different.  Okay.  Do they have

19   the same effect?  I don't know.  Excuse me, I'm looking at the

09:11:14AM 20  wrong one.

21         He goes I don't understand the question, but I'll

22   answer it to the best of my ability.  I'm looking at the last

23   page of the submission you gave me, and the answer is the same

24   as I just gave you before , we talked to Bausch & Lomb, asked

09:11:27AM 25  them to create a formulation that would have, in this case, 80

1  milligrams of zinc on the formulation, and whatever they did,

2  that's what they did.  I don't -- I wouldn't second-guess

3  them.

4          I really don't understand that answer because

09:11:39AM 5  there's no context to it, but that one, if there was context

6  to it, he is the inventor, I assume it's a he --

7          **MR. DOMBROWSKI:** Yes.

8          **MAGISTRATE JUDGE FELDMAN:** -- I think I'd allow it

9  if there was some context to it.

09:11:53AM 10         **MR. DOMBROWSKI:** Your Honor, part of it is not just

11  asking who they were asking of the other witnesses, but all of

12  these questions they're just asking about equivalent and

13  sameness, just using those words.

14         They're not laying out the test.  So even if this

09:12:04AM 15  was a proper person, they're not setting up this question to

16  get the right answer.

17         **MAGISTRATE JUDGE FELDMAN:** So that's why -- I've got

18  redacted deposition testimony.  I really need more than I have

19  here.

09:12:13AM 20         But of the three of them, I think this is a person

21  that would be of ordinary skill in the art.  And if they

22  actually had testimony that would be relevant to the Doctrine

23  of Equivalents, I think I'd allow it.

24         **MR. SUSSER:** Your Honor, may I respond?

09:12:28AM 25         **MAGISTRATE JUDGE FELDMAN:** Yes.

1          **MR. SUSSER:** I'll confess, this is a very important

2    issue for Vitamin Health so I do want to fight -- give it my

3    best fight.

4          I did not put forward the best excerpts.  I will do

09:12:39AM 5    that, and we will submit to the Court by Monday morning

6    excerpts that are representative of those two points.  One,

7    that the AREDS 2 study was not powered to test equivalency;

8    and number two, that people on their side, people of ordinary

9    skill in the art believe them not to be equivalent.

09:13:00AM 10          I would say this, however, if I could just finish?

11          **MAGISTRATE JUDGE FELDMAN:** Mm-hmm.

12          **MR. SUSSER:** Dr. Johnson defines a person of

13   ordinary skill in the art, what she believes.  First she says

14   it's someone with a medical type degree in eye health, and

09:13:14AM 15   some experience with visual loss.

16          Then she says "alternatively, a POSA, person of

17   ordinary skill in the art, at the time could have been a

18   person with a bachelor's degree with a greater number of years

19   of experience.

09:13:31AM 20          Now, all the people that we are proposing meet

21   Dr. Johnson's own definition of person of ordinary skill in

22   the art.  That's the first point.

23          The second point is --

24          **MAGISTRATE JUDGE FELDMAN:** Let me say this:  I have

09:13:44AM 25   a bachelor's degree and I wouldn't be an ordinary -- a person

1   of ordinary skill in the art.  I think it's got to be

2   something more than having a bachelor's degree.  It's got to

3   be a bachelor's degree in some specific area of --

4           **MR. SUSSER:** She says with a greater number of years

09:13:57AM 5   of -- I'm quoting exactly.

6           **MAGISTRATE JUDGE FELDMAN:** Greater number of what

7   years?

8           **MR. SUSSER:** Years of experience in -- in the

9   nutritional supplement area, including --

09:14:07AM 10          **MAGISTRATE JUDGE FELDMAN:** Okay.

11          **MR. SUSSER:** -- so all of these people have many

12  years of experience in the nutritional supplement area and a

13  bachelor's degree at the minimum.

14          Now, Dr. Balaram was the medical head of this

09:14:18AM 15  particular product.

16          Robert Meyering has worked in this field for 30, 40

17  years first at stores, then at Bausch.  He knows this stuff,

18  he markets it, he sells it, he talks about it all the time.

19  These are people who actually know.  They are people who are

09:14:32AM 20  ordinary skill in the art.

21          Then I would cite the Court to the *Hilton Davis*

22  *Chem Co. vs. Warner Jenkinson* where the Federal Circuit

23  en banc said we're going to restate our position on Doctrine

24  of Equivalents.  And one of the things they say, and I have

09:14:47AM 25  this decision here --

**MAGISTRATE JUDGE FELDMAN:** I'm familiar with the decision.

**MR. SUSSER:** They focus on is it interchangeable to a person of ordinary skill in the art.  All of the quotes that -- I will give the quote Monday morning on this subject, on the subject of this, are we don't think it's interchangeable.  They are people of ordinary skill in the art who say this is not interchangeable.

That's critical for us to get in front of the jury not only to defend against infringement on 25, but on willfulness as well.

And so when the jury hears, we believe, that Dr. Ferris of the NEI, Dr. Chew of the NEI, Susan Bressler, Dr. Bressler their expert witness, Robert Meyering, John Ferris, Mimi Balaram the medical director, they're all saying AREDS 2 is not powered for equivalence, number one.

And number two --

**MAGISTRATE JUDGE FELDMAN:** What's that mean, AREDS 2 is not powered for equivalence?

**MR. SUSSER:** It means the study was not designed to test whether they were equivalent.  You can't say that.

Dr. Bressler said, look, you can't say they're equivalent with the testing that was done on AREDS 2.  It's inadequate.

It was a limited test for limited purposes and it

1    wasn't designed -- the study itself doesn't purport to be an

2    equivalency study.

3              So when they hear that, Your Honor, that is going

4    to help our defense enormously, we believe, which is why it's

09:16:08AM 5    so important.

6              These are all people of ordinary skill in the art,

7    they're experts in this field, in the nutritional field, and

8    they've all said it's not interchangeable.

9              Under the *Hilton Davis* case --

09:16:20AM 10          **MAGISTRATE JUDGE FELDMAN:** Okay, let me cut this

11   short a little bit.  There's two issues here.  One I've said,

12   I think it's the Aqua Tek case, it may be T-E-K, that deals

13   with, you know, what type of testimony is relevant to the

14   Doctrine of Equivalents, but it's got to be somebody -- a

09:16:39AM 15   person of ordinary skill in the art.

16             But, second of all, even if you had that person,

17   you have to show that the testimony you're offering says what

18   you say it says, and right now it doesn't, at least with these

19   experts.

09:16:53AM 20          **MR. SUSSER:** That's fair.  And that's because I

21   mischose my excerpts.  Please allow me, Your Honor, by Monday

22   to give you some better experts.

23             **MAGISTRATE JUDGE FELDMAN:** I will.  And if you have

24   a memorandum of law attached which sets forth, particularly on

09:17:06AM 25   this issue of willfulness, how testimony on the Doctrine of

1   Equivalents can be transferred to the issue of willfulness, I

2   would be interested in that too.

3           **MR. SUSSER:** In the meantime, Your Honor, could I

4   hand to the Court -- and of course opposing counsel -- a short

09:17:19AM 5   evidentiary memorandum that we prepared with the *Hilton Davis*

6   case?

7           **MAGISTRATE JUDGE FELDMAN:** Okay.

8           **MR. DOMBROWSKI:** Can I make one point, Your Honor?

9   Of the witnesses he listed, at least a couple of them are not

09:17:29AM 10   persons of ordinary skill in the art.  Mr. Meyering is a

11   marketing guy, like I said earlier.  So he's conflating a lot

12   of witnesses here of what we're talking about.

13          **MAGISTRATE JUDGE FELDMAN:** Right.  If there's a

14   dispute of that, then I would have questions asked outside the

09:17:42AM 15   presence of the jury and I would have to make a determination

16   whether the person is --

17          **MR. DOMBROWSKI:** Sure, I just wanted to clarify

18   that, you know.

19          **MAGISTRATE JUDGE FELDMAN:** Okay.  This is not

09:17:49AM 20   something that's going to come up Monday or Tuesday in the

21   trial?

22          **MR. SUSSER:** I would like to raise it in my

23   opening.

24          **MAGISTRATE JUDGE FELDMAN:** Okay.  Well, as of now

09:17:57AM 25   you can't, but I'll take a look at what you give me on Monday.

1            **MR. SUSSER:** Thank you, Your Honor.

2            **MAGISTRATE JUDGE FELDMAN:** Okay.  Okay, to be

3    decided is Bausch & Lomb's motion for summary judgment on

4    validity.  We plan on issuing that today.

09:18:24AM 5            Also, Vitamin Health's lone remaining summary

6    judgment motion or partial summary judgment motion, the lone

7    remaining issue is the prosecution estoppel argument.  We hope

8    to issue a written decision on that today.

9            With respect to the submissions I asked for on what

09:18:45AM 10   questions would be given to the jury and what questions would

11   be given or made -- determinations would be made by the Court,

12   on July 26th I issued a decision and I set forth for the

13   parties what issues would be resolved by the Court and what

14   issues would be determined by the jury.

09:19:20AM 15           With respect to enablement I said, based on the

16   law, that this was a question for the Court to resolve, but if

17   there were factual disputes over an event, I would allow the

18   jury to resolve that dispute through a specific interrogatory

19   question.

09:19:43AM 20           I tried to make clear in my Decision and Order that

21   I issued on the 26th that what I was looking for was a genuine

22   factual dispute over an event as opposed to simply competing

23   expert opinions about the legal significance of an undisputed

24   fact or event.

09:20:04AM 25           I've reviewed the questions on enablement that I

1  have received from Vitamin Health.  Based on my review, I

2  don't belive these questions are regarding a factual dispute

3  as to enablement, but really the questions that go to the

4  ultimate determination that I need to make in whether a person

09:20:26AM 5  of ordinary skill in the art -- excuse me, whether the

6  specification describes the invention in such a way to enable

7  a person of ordinary skill in the art to make and use the

8  invention.

9          So that the questions that are posed by Vitamin

09:20:48AM10 Health, to the extent they need to be answered, will be

11  answered by the Court based upon evidence at trial ,and I will

12  not be submitting those particular questions to the jury

13  because I think they are the ultimate issue that needs to be

14  decided and not really a factual -- genuine factual dispute.

09:21:06AM15          With respect to the schedule --

16          **MR. DOMBROWSKI:** Your Honor, can I ask about that

17  last issue?  A few of the equitable defenses have not clearly

18  been laid out as going to the Court, but I think you mentioned

19  in the first pretrial conference, which we don't have a

09:21:22AM20 transcript of, that they will be going to you, which are

21  laches, acquiescence, waiver and equitable estoppel.

22          **MAGISTRATE JUDGE FELDMAN:** I don't think there were

23  any dispute as to those.  That's why I didn't.

24          **MR. DOMBROWSKI:** Just clarifying. Thank you.

09:21:30AM25          **MAGISTRATE JUDGE FELDMAN:** So I want to talk about

                the schedule.  I'm thinking that the dropping of those two

                counts and the summary judgment motion may have shortened the

                trial.  Am I correct on that?

                         **MR. KLINE:** Your Honor, that's correct.  And just so

09:21:51AM      you know, we have spoken to the other side about streamlining

                the number of products, and we've grouped them -- I think

                we're in agreement -- we have six groups of the 16 products.

                         We're down to one representative product from each

                of those groups.  Now, three of those groups were the subject

09:22:10AM      of the summary judgment, so we're not going to have to walk

                through all those.

                         So we're really down to, at least for infringement,

                just three groups with one representative product for each

                one.

09:22:20AM               And we're only asserting claims 1, 19 and 31, which

                are the same ones that were part of the summary judgment

                motion. So I think that does streamline it quite a bit.

                         The other thing, we're working with them is how to

                handle -- obviously, because of the ruling on summary judgment

09:22:39AM      on some of the part, you know, some of it has applicability to

                these other products because they kept all the ingredients the

                same except changed one, and we're trying to work with them

                on, hopefully, a stipulation where we can come to something

                like based on the Court's claim construction, the parties

09:22:58AM      agree it literally meets claims, you know, element A, B and C.

1  The only issue to be presented is 2.8.  And that will

2  streamline it too.

3           **MAGISTRATE JUDGE FELDMAN:** Are you confident you'll

4  reach agreement on that?

09:23:12AM 5           **MR. KLINE:** Unfortunately, I've been speaking with

6  Mr. Carlson, and he's not here.  But it's my understanding

7  they're agreeable to that.

8           And if -- I guess Mr. Tobin or Mr. Susser can tell

9  me differently.

09:23:26AM10           **MR. TOBIN:** I think we've generally narrowed and

11  we're in agreement.  I think there may be one or two minor

12  issues left as it relates to one of the groupings, but

13  generally I think we're in agreement.

14           **MAGISTRATE JUDGE FELDMAN:** Okay.  And you'll have

09:23:37AM15  the physical products that you're going to use in court?

16           **MR. KLINE:** Correct, to the extent -- yeah, right.

17           **MR. DOMBROWSKI:** I think we do have physical

18  exhibits, yes.

19           **MAGISTRATE JUDGE FELDMAN:** How much shorter do you

09:23:55AM20  think that makes your presentation?

21           **MR. KLINE:** We haven't added it up.  Certainly it

22  cuts out a lot because of the inducement and the false

23  advertising issues.  I would say -- I would say it probably

24  reduced it 25% at least.

09:24:17AM25           **MAGISTRATE JUDGE FELDMAN:** Okay.  With respect to

1 damages, how are you handling the damage testimony for the

2 products that summary judgment's granted on?

3       **MR. KLINE:** We have updated the damage reports based

4 on the updated sales numbers. We have broken it out by these

09:24:36AM 5 groupings -- the 80 2.0, the 80 2.8 milligram of copper and

6 the 25 milligram.

7       **MAGISTRATE JUDGE FELDMAN:** How do you propose

8 to explain to the jury that they're going to be considering

9 damages on products that they're not hearing about?

09:24:52AM 10       **MR. KLINE:** Well, I'm assuming there would be some

11 sort of stipulation because -- saying that these products have

12 already been found to infringe, but they still have their

13 validity argument on.

14       **MAGISTRATE JUDGE FELDMAN:** I'm not sure I'm going to

09:25:04AM 15 tell the jury these products have been found to infringe. I

16 think we've got to work out a sanitized stipulation that

17 you're being asked to determine on these, you're not to

18 consider whether they infringe or not. I think that's --

19       **MR. SUSSER:** I'm worried that if the jury hears that

09:25:18AM 20 you've made a decision, they will be against us.

21       **MAGISTRATE JUDGE FELDMAN:** So I'd like you to work

22 out a different stipulation on that.

23       **MR. SUSSER:** Yes, we will, Your Honor, we'll propose

24 something.

09:25:31AM 25       **MAGISTRATE JUDGE FELDMAN:** Okay. So I'm interested

1    to know your thoughts on a schedule.  My current thinking now

2    is to start at 8:30 and go to 1:30, take two breaks -- this is

3    with the jury; and then use the afternoon, maybe come back at

4    2:30 or so for testimony on issues that will solely be before

09:25:58AM 5    me.

6              MR. SUSSER: I think that could work, Your Honor.

7              MAGISTRATE JUDGE FELDMAN: Who are the witnesses

8    that are going to testify on the equitable or the legal

9    issues?

09:26:12AM 10             MR. KLINE: They're their issues, so I'm not

11   certain.

12             MR. SUSSER: On the equitable issues, Your Honor,

13   estoppel and laches, that would be Mr. Shepherd, Aaron

14   Shepherd.

09:26:28AM 15             MAGISTRATE JUDGE FELDMAN: So he's going to be here

16   for the whole trial anyway, right?

17             MR. SUSSER: He will be.

18             MAGISTRATE JUDGE FELDMAN: All right.  So we'll be

19   able to fit him in, okay.

09:26:39AM 20             MR. SUSSER: Your Honor, if I could just come back

21   to one point?  We can get the Court those excerpts by

22   1 o'clock today.  Would it be, just to avoid Tuesday -- Monday

23   morning, would it be possible to come back this afternoon and

24   just --

09:26:53AM 25             MAGISTRATE JUDGE FELDMAN: I'm out this afternoon,

1   which is why I want to do it this morning.

2           **MR. SUSSER:** Yes.

3           **MAGISTRATE JUDGE FELDMAN:** I'm going to be working

4   on this all weekend, so if you get it to me --

09:27:01AM 5           **MR. SUSSER:** We'll get it to you this afternoon for

6   sure, Your Honor.  I do appreciate that.

7           There was one issue in the letter we didn't address

8   and that was the cross-examination issue.

9           **MAGISTRATE JUDGE FELDMAN:** Explain that to me.

09:27:10AM 10          **MR. SUSSER:** Sure.  Basically what I'm proposing is

11  the same arrangement that we have for Aaron Shepherd, which is

12  we will call Mr. Shepherd in our case-in-chief, but they will

13  be able to cross-examine him not only on what we ask him

14  about, but anything -- any topic that they've designated from

09:27:29AM 15  his deposition.  So they automatically get a wider swath of

16  territory for cross-examination.

17          We want to do the same thing for Mr. Meyering and

18  Mr. John Ferris, their two fact witnesses.  To the extent

19  those individuals don't talk about something being equivalent,

09:27:49AM 20  for example, we want to be -- assuming the Court allows it in

21  eventually, we would want to be able to ask them that, about

22  that.  And we've designated testimony that would be the topics

23  we want to ask them about.

24          They've said -- of course they agreed to Mr.

09:28:04AM 25  Shepherd, but they said no as to Meyering and Ferris.  They

1    said maybe you can read them to the jury with our counter

2    designations and objections and we don't want to do that.  We

3    already have too much to read to the jury, the jury's going to

4    be bored.

09:28:15AM 5          We want -- the witnesses are up there, we're

6    telling them the topics.  It's just their deposition

7    testimony.

8          **MAGISTRATE JUDGE FELDMAN:** What are the topics

9    beyond equivalence?

09:28:26AM 10          **MR. SUSSER:** I can't think of any, Your Honor.

11          **MAGISTRATE JUDGE FELDMAN:** So it really depends on

12    my ruling?

13          **MR. SUSSER:** I'd have to go back and double check

14    Meyering and Ferris, but I'm pretty sure most of them would

09:28:40AM 15    be on the Doctrine of Equivalents and whether something is

16    interchangeable.  And so I think the answer is a qualified

17    yes.

18          **MAGISTRATE JUDGE FELDMAN:** Have you designated all

19    those sections that you want to ask them about?

09:28:53AM 20          **MR. SUSSER:** Yes, Your Honor.

21          **MAGISTRATE JUDGE FELDMAN:** Are those designations

22    that I have already?

23          **MR. SUSSER:** Yes, Your Honor.

24          **MAGISTRATE JUDGE FELDMAN:** Okay.  So you want to be

09:28:59AM 25    able to question them live on that?

1          **MR. SUSSER:** Cross-examine them after they finish

2     their direct, even if it's not raised on direct.

3          **MAGISTRATE JUDGE FELDMAN:** Okay.

4          **MR. DOMBROWSKI:** Your Honor, a few points on that.

09:29:09AM 5  One, back to my earlier point, Meyering and John Ferris are

6     not experts, they're POSA's.

7          So the Doctrine of Equivalents and the scope of the

8     patent claim questions we think is inappropriate for them as

9     an initial matter.

09:29:20AM 10      Second of all, Mr. Susser makes it seem like we

11    wanted this Aaron Shepherd deal.  This is something they

12    approached us about to have this accomodation so that we

13    didn't preempt his live testimony by playing his video or

14    reading his transcript.  So it's not like we're seeking this

09:29:32AM 15  arrangement.

16         And for our witnesses we don't want that

17    arrangement.  We don't want the cross blown wide up.  We would

18    rather have them play the properly 30(b)(6) designated

19    testimony in their case-in-chief.

09:29:43AM 20      **MAGISTRATE JUDGE FELDMAN:** Or they could call them

21    in their case?

22         **MR. DOMBROWSKI:** They could, although I'll note they

23    did not list them on their list of witnesses.

24         **MR. SUSSER:** Actually, we did, Your Honor.  We

09:29:51AM 25  referenced their witness list, we listed them and their

1  Rule 30(b)(6) deponents, both of them.

2      And the testimony we're asking them about is

3  largely, not exclusively, is Rule 30(b)(6) testimony which can

4  be used for any purpose at trial.

09:30:04AM 5      **MAGISTRATE JUDGE FELDMAN:** Assuming I rule that

6  there's something on the Doctrine of Equivalents that they can

7  ask him about, which right now I haven't seen anything, but

8  assuming I see something, do you want to bring them back or do

9  you want to allow him to be asked?

09:30:21AM 10      **MR. DOMBROWSKI:** Just allow him to be asked on cross

11  I suppose.

12      **MAGISTRATE JUDGE FELDMAN:** That's up to you.  I'm

13  not going to force you to do anything.  There's a lot of

14  strategy that goes into these cases, I know that, I've tried

09:30:35AM 15  cases.

16      So I'm going to let you try your own case, but it's

17  really an inconvenience to your witness, I guess, that you

18  have to weigh.

19      **MR. DOMBROWSKI:** Sure, and he's from Florida.  I

09:30:42AM 20  mean, we can work it out.  I just don't know on the spot.

21      **MAGISTRATE JUDGE FELDMAN:** Okay.  I'm not forcing

22  them to do that.  I'm going to first find out if there's

23  anything -- because right now there isn't anything, but you're

24  going to get me something by 1 o'clock today, I want to give

09:30:53AM 25  you a chance to respond to it.  Maybe by the close of business

1  if you get it by 1?

2          **MR. DOMBROWSKI:** Can I make one other point?  We

3  have served them our objections and counter designations to

4  their designations for Mr. Meyering and Mr. Ferris.

09:31:05AM 5          But we have not had the whole procedure back and

6  forth.  We've not seen their objections to our counter

7  designations because they were given to us, you know, that

8  process has not played out yet.

9          So I'm not sure it's possible to do that by this

09:31:17AM 10  afternoon, b ut we can try, but just we have not had the back

11  and forth yet on that.

12          **MR. SUSSER:** Our --

13          **MAGISTRATE JUDGE FELDMAN:** I thought you said you

14  designated the Doctrine of Equivalent testimony you want for

09:31:25AM 15  these witnesses?

16          **MR. SUSSER:** We did.  We gave it to them and they

17  objected and counter designated.

18          Our position is we don't want -- we don't need to

19  go through that.  You can question him on anything you want on

09:31:36AM 20  direct, you can redirect him on that, you can object to our

21  questions at trial if you want.

22          We're asking that it not be done through a

23  deposition designation process.

24          **MR. DOMBROWSKI:** I guess the reason why I bring that

09:31:49AM 25  up is, for instance, the quote from Mr. Meyering that they

1  gave you in the letter is not properly within the 30(b)(6)

2  scope.

3          So, I mean, that's not even -- there is no 30(b)(6)

4  topic for Mr. Meyering on the scope of the patent claims, for

09:32:01AM 5  instance, and that's what -- the question was asked to him on

6  that particular portion they gave you.

7          So that's noted in our objections that we provided

8  them.

9          **MR. SUSSER:** They can object -- if they want, they

09:32:13AM 10  can object at trial if I ask a cross question.  I don't

11  believe that I will.

12          I believe what I'll ask is -- it doesn't need --

13  he's a fact witness and he's a 30(b)(6) witness, he's

14  testifying as both.  He has personal knowledge because he

09:32:25AM 15  lived through all this; he was the NEI's -- chief communicator

16  with the NEI, et cetera.  So he's a personal witness, he's a

17  Rule 30(b)(6).

18          Most of the topics, if not all, are -- that I will

19  want to ask him about on cross are Rule 30(b)(6) topics.  That

09:32:39AM 20  was key.  He testified on a lot of those issues.

21          **MR. DOMBROWSKI:** My response is just that particular

22  portion at least they gave you in the letter is not properly

23  30(b)(6).

24          **MAGISTRATE JUDGE FELDMAN:** Okay, let's look at that

09:32:50AM 25  for a second.  If, for example, he convinces me that this is a

1    person of skill in the art, and that there's something that

2    he's testified about that goes to a relevant issue on the

3    Doctrine of Equivalents --

4              **MR. DOMBROWSKI:**  And is properly 30(b)(6) within

09:33:04AM 5    the scope of their topics.

6              **MAGISTRATE JUDGE FELDMAN:** Let's say it's not within

7    the scope of their topics.

8              **MR. DOMBROWSKI:** Then they don't have a right to

9    play the deposition in their case-in-chief if he's --

09:33:11AM 10    **MAGISTRATE JUDGE FELDMAN:** No, no, he's not playing

11    the deposition.  He's going to ask him live.

12             **MR. DOMBROWSKI:** Okay.

13             **MAGISTRATE JUDGE FELDMAN:** Right?

14             **MR. SUSSER:** Right.  This isn't scripted.  This is

09:33:17AM 15    cross-examination.

16             **MAGISTRATE JUDGE FELDMAN:** Yeah, he's going to ask

17    him live.

18             **MR. DOMBROWSKI:** We're already at the point where

19    that's -- okay.

09:33:23AM 20             **MAGISTRATE JUDGE FELDMAN:** We're far ahead of where

21    we are now.  I haven't made a ruling on any of this.  I'm

22    assuming that he gives me something that says -- from some

23    expert that says this person has -- not an expert.  From

24    someone of position of skill in the art, that they have

09:33:37AM 25    something that's relevant to the Doctrine of Equivalents.

1    **MR. DOMBROWSKI:** My response to that is the deal we

2  made with Aaron Shepherd is that on our cross-examination of

3  him we can go outside the scope of the direct for -- that is

4  within the scope of what we designated properly 30(b)(6) in

09:33:52AM 5  his transcript.

6          So to the extent they're going to try to go outside

7  the scope of the direct with Mr. Meyering on testimony that's

8  not properly within the scope of 30(b)(6) designated testimony

9  in his deposition transcripts that's, we believe, improper and

09:34:04AM 10  should be outside the scope --

11          **MAGISTRATE JUDGE FELDMAN:** Maybe I need to take

12  another look at 30(b)(6), but let's say you have somebody who

13  is a 30(b)(6), but also is intricately involved in the facts

14  of the case.

09:34:17AM 15          Normally you would be restricted on

16  cross-examination to topics that were testified to on direct

17  examination, but I've had a lot of cases where -- because for

18  convenience of the witnesses they don't want to bring them

19  back and put them on as an adverse witness on their case, they

09:34:34AM 20  would rather just cross-examine them on the other side.

21          I don't care what you do, but I don't think someone

22  can escape being asked questions about something they have

23  personal knowledge about simply because they're also

24  designated as a 30(b)(6).

09:34:46AM 25          **MR. DOMBROWSKI:** Okay.

1    **MR. SUSSER:** Your Honor, I will just add two things.

2  One, as far as Aaron Shepherd, that was not my understanding

3  of the deal.  They can question him on 30(b)(6) topics, but

4  also other topics that they designated.  That's no problem.

09:34:59AM 5    **MAGISTRATE JUDGE FELDMAN:** What about topics they

6  didn't designate?  What if they want to ask him about

7  something that they have the right to ask him about it, it's

8  relevant, that they could call him as their own adverse

9  witness --

09:35:12AM 10    **MR. SUSSER:** I mean, if it's relevant, it's fine.  I

11  mean --

12    **MAGISTRATE JUDGE FELDMAN:** My bad.

13    **MR. SUSSER:** It's relevant, Your Honor -- look, if

14  it's relevant, they can ask Aaron Shepherd about it.  It's

09:35:30AM 15  perfectly appropriate.

16    Mr. Meyering, I said to him would your personal

17  testimony be any different than your Rule 30(b)(6)?  He said

18  no, it's the same.

19    I think we're really trying to micromanage

09:35:41AM 20  something that -- it's an organic process.  There's

21  cross-examination, it will flow where it flows.  As long as

22  the parties stick to relevant information, the jury can

23  ultimately sift it out.

24    **MAGISTRATE JUDGE FELDMAN:** Right.  I know you have

09:35:52AM 25  this very specific agreement that you negotiated.

1    But what I'm saying is from my view, I'll enforce

2 whatever agreement you want, but it might be simpler if we say

3 a witness will testify once, if that's what you want?

4    **MR. SUSSER:** I agree to that.

09:36:13AM 5    **MAGISTRATE JUDGE FELDMAN:** And you can ask him

6 questions as though you call him as an adverse witness on your

7 own; or we have a rule that says no, we're gonna play it just

8 by the Federal Rules of Evidence that cross-examination is

9 limited to what was gone over on direct examination, and if

09:36:33AM10 you want this witness to present something in your case that

11 he didn't or she didn't testify about on direct examination,

12 you have that right, but you've got to wait until the other

13 side rests.

14    So I'm not saying what you should do, but I think

09:36:47AM15 you should think about it because the system that you have

16 now, which is are we inside a designation, are we outside a

17 designation, that's going to require me to become much more

18 familiar with the designations than I am right now and much

19 more familiar with the details of whatever agreement you

09:37:04AM20 worked out, and I'm not privy to that.

21    So I think it's cleaner either if you go all the

22 way one way or all the way the other way.

23    **MR. DOMBROWSKI:** I understand.

24    **MAGISTRATE JUDGE FELDMAN:** And you can do it, as far

09:37:14AM25 as I'm concerned, witness by witness.  If there's some

1  witnesses you want to do that with, that's fine.  If there's

2  some you don't want to do that with, that's fine.

3        **MR. DOMBROWSKI:** That's where we're at right now.

4  Leading up to this we already had this arrangement about Aaron

09:37:25AM 5  Shepherd.  And now just recently it's being blown up into

6  these other witness and the dust hasn't settled on all that

7  yet.

8        So I guess where we're at is kind of like what you

9  said, we need to determine which witnesses -- what's going to

09:37:37AM 10  be done with each witness.

11        **MAGISTRATE JUDGE FELDMAN:** I think that's true.

12        **MR. SUSSER:** Okay.

13        **MAGISTRATE JUDGE FELDMAN:** Unless you have a general

14  agreement.

09:37:41AM 15        So unless I hear otherwise, I'm either going to

16  enforce whatever agreement you've agreed on or I'm going to

17  enforce the Federal Rules of Evidence.

18        **MR. DOMBROWSKI:** I think that's what we prefer.  We

19  have an agreement for Aaron Shepherd.  And we're just asking

09:37:54AM 20  to enforce the Federal Rules for our witnesses.

21        **MR. KLINE:** We'll think about it.

22        **MAGISTRATE JUDGE FELDMAN:** Okay.  All right?

23        **MR. DOMBROWSKI:** Couple other points to raise.  One

24  is the preliminary jury instructions, that you said you would

09:38:08AM 25  rule on the disputed portions before trial.

We just need to get the jury binders together --
not to obviously force that on you.

**MAGISTRATE JUDGE FELDMAN:** I had forgotten about
that. In terms of preliminary instructions, I think once we
get the jury selected, we're going to show them the video and
hand out the kind of phoney patent that they follow along with
the video.

**MR. DOMBROWSKI:** Okay.

**MAGISTRATE JUDGE FELDMAN:** Okay? And then I've got
to take a closer look at your preliminary jury instructions.

**MR. DOMBROWSKI:** The thing I'll add to that is in
light of the recent developments this week on many fronts,
there are other things besides the disputed portions we may
need to tweak to make them correct now.

**MAGISTRATE JUDGE FELDMAN:** Why don't you, by the
close of business today, get me a revised preliminary
instruction?

**MR. DOMBROWSKI:** Okay, thank you. Another small
issue is we still have not received the privileged documents
you ordered them to produce which we would like to start
processing for our case.

**MAGISTRATE JUDGE FELDMAN:** Do you have those?

**MR. TOBIN:** We'll get those to them, Your Honor.

**MAGISTRATE JUDGE FELDMAN:** Get those to them by
1 o'clock this afternoon.

1          **MR. TOBIN:** One further issue, Your Honor, if I may?

2    When we sent the designations to the Court, the parties

3    exchanged designations and objections and what not, and when

4    we submitted them to the Court in the larger form it appears

09:39:19AM 5    we inadvertently included -- excluded one of the witnesses,

6    Emily Chew's designations.  It was inadvertent.

7          We sent them to the other side once we realized,

8    and we have a copy here for the other side if they want and

9    one for the Court.

09:39:34AM 10         **MR. DOMBROWSKI:** I don't think we're going to fight

11   on that.  We're fine with those coming in as it -- we had

12   dealt with them before -- oh, we're talking about Emily Chew?

13   We did not have any objections to those particular portions.

14         **MR. TOBIN:** There were no objections.  I just wanted

09:39:44AM 15   to provide the Court with a copy.

16         **MAGISTRATE JUDGE FELDMAN:** Get me the transcript.

17   But there's no objections I need to rule on?

18         **MR. DOMBROWSKI:** Correct, Your Honor.

19         **MR. TOBIN:** Correct, Your Honor.

09:39:52AM 20        **MR. DOMBROWSKI:** Your Honor, we're confirming, we

21   can respond to whatever they submit by 1 by 5 o'clock today?

22         **MAGISTRATE JUDGE FELDMAN:** Yes.

23         **MR. DOMBROWSKI:** Okay, thank you.

24         **MAGISTRATE JUDGE FELDMAN:** Okay?  All right, see you

09:40:19AM 25   on Monday.

1     (**WHEREUPON**, the proceedings adjourned at 9:40 a.m.)

2                    *    *    *

3              **CERTIFICATE OF REPORTER**

4

5         In accordance with 28, U.S.C., 753(b), I certify that

6    these original notes are a true and correct record of

7    proceedings in the United States District Court for the

8    Western District of New York before the Honorable Jonathan W.

9    Feldman on July 29th, 2016.

10

11   S/ Christi A. Macri

12   Christi A. Macri, FAPR-CRR
     Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25